## ALFRED P. DUGGER *et al.*

### *v.*

## DANIEL OGLESBY.

*Filed at Mt. Vernon, June 21, 1881.*

1. COVENANTS IN DEED—*when extends to equitable claim.* Where there is an outstanding equitable title which is entitled, as against the grantee as well as the grantor, in a deed with full covenants, to have united to it the legal estate, and so defeats the estate assumed to be conveyed by the deed, by claim paramount, the covenants in the deed will extend to and embrace such equitable claim.

2. Where, after bill filed by a partner to have a conveyance of a lot set aside, on the ground that the consideration of the deed was partnership goods, exchanged by the other partner for the lot, who fraudulently took the deed in his wife's name, and during the pendency of such bill the lot is conveyed by the latter partner and wife to another, by deed, with the usual covenants of warranty, and afterwards a decree was rendered in the suit subjecting the lot to sale in payment of the partnership debts: *Held,* that the purchaser taking during the pendency of the suit to avoid the title of his grantors, and all persons afterwards claiming under him, was bound by the decree which was rendered, and therefore the covenants in the deed embraced the equitable title under which the land was sold and the legal title divested.

3. SAME—*eviction.* Where a party suing on the covenants in a deed has been evicted under a paramount title, it is not material whether the steps taken to procure a writ of assistance were regular or not, as the party might voluntarily yield to the adverse title.

4. SECONDARY EVIDENCE—*sufficiency of search for lost deed.* Where a witness testified that he was the solicitor of the grantee, and to the execution, acknowledgment and delivery of a master's deed; that he, the witness, placed it on his desk in the court room, with another paper, and both were lost; that he had never been able to find them afterwards; that he had made diligent search for them, and that the deed had never been recorded: *Held,* that the search was sufficient to admit secondary evidence of the contents of the deed, and that it was not necessary to show a search in the recorder's office, or that inquiries had been made of the grantee.

5. SAME—*proof of contents of lost deed.* When taken in connection with the record of a master's sale and his certificate of purchase, the courts will not require so full proof of the contents of a master's deed when it is lost as otherwise might be.

6. SAME—*not allowed when profert is made.* In a suit upon a deed or sealed instrument, where a profert, or an excuse for the want of it, is

necessary, if the plaintiff makes profert, and thereby professes to produce the deed when he is not prepared to do so, and the defendant pleads *non est factum*, the plaintiff, on objection, will not be permitted to give evidence of its loss or destruction, or its being in the defendant's possession, and then make proof of its contents.

7. LIMITATION—*of suit against administrator and heirs.* Where the cause of action does not accrue until more than two years after the death of the debtor, and the grant of letters and the settlement of his estate, the two years' limitation of the statute, as to claims against estates, will not apply to an action brought by the creditor against the administrator and heirs of the deceased debtor.

8. JUDICIAL SALE—*executing master's deed after party's death.* Where land is properly sold under a decree in the lifetime of the defendant, the master's deed may properly be executed after the defendant's death, without any revival of the suit against his heirs.

9. JUDGMENT—*form in suit against administrator and heirs.* In a suit against the personal representative and heirs of a deceased person, the court found the amount that descended to each heir, and then rendered judgment against all the heirs and the administrator for the sum found due, to be satisfied out of the estate so descended to the heirs, with express provision that neither of the heirs be subjected to a greater liability than the sum he received by descent, and that the judgment against the administrator be *quando acciderint: Held,* that there was no objection to the form of the judgment.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. JOSEPH GILLESPIE, Mr. DAVID GILLESPIE, and Mr. C. HAPPY, for the appellants:

The covenants of the deed are against all legal and subsisting liens, incumbrances, assessments, etc., and it never was intended to warrant against some equitable claim that might ripen into a lien. *Jackson* v. *Ewing,* 17 Ind. 505; *Dobbens* v. *Brown,* 2 Jones, 75; *Ellis* v. *Welch,* 6 Mass. 249; *Marston* v. *Hobbs,* 2 id. 458; *Barley* v. *Millenberger,* 31 Pa. 37; *Sedgwick* v. *Nollenbeck,* 7 Johns. 380; *Brady* v. *Spurck,* 27 Ill. 481; *Owen* v. *Thomas,* 33 id. 325; Rawle on Cov. 200.

An action for the breach of the covenant of warranty must be brought by him who owned the land when the breach took place. 2 Washb. Real Prop. 713, side p. 662.

As to the proof of loss or search, to admit secondary evidence of a lost, unrecorded deed, see *Mariner* v. *Saunders,* 5 Gilm. 117; *Owen* v. *Thomas,* 33 Ill. 326.

The claim sued on was never exhibited against the estate of Edward C. Dugger within the two years after the grant of administration. It may be urged that the cause of action did not accrue until after the limitation had expired, but this makes no difference. It is a misfortune, but no excuse. *Stone* v. *Clark, Admr.* 40 Ill. 414; *McLean* v. *McBean,* 74 id. 137; *Hoffman* v. *Wilding,* 85 id. 456; *Guy, Admr.* v. *Gerick,* id. 429; *Laughlin* v. *Hess,* 89 id. 122.

The judgment against the heirs was not proper. *Branger* v. *Lucy,* 82 Ill. 93.

As to frame-work of declarations on lost instruments, see *Mason* v. *Foster,* 3 J. J. Marshall, 284; *Woodford* v. *Board,* 44 Miss. 587; *Cutts* v. *United States,* 1 Gallison, 69; *Smith* v. *Emery,* 7 Halst. 59; *Rees* v. *Overlough,* 6 Cow. 749.

Messrs. METCALF & BRADSHAW, for the appellee:

Counsel certainly do not mean to say that a man may not covenant against equitable liens or claims as well as legal. This covenant is not restricted to legal, but applies to all liens of any description.

We contend that it would be unjust and unreasonable to limit this covenant, that is general, to legal ones only.

The proof of the loss of the master's deed to Pearce was sufficient. *Swearengen* v. *Gulick et al.* 67 Ill. 212.

This claim is not a debt of the ancestor, but his covenant, and of the lien by express covenant in the deed, and the consideration paid, enters into and becomes a part of the ancestor's estate which the heir gets. It never became a debt, if at all, until eviction, in 1874. *Bridgeford et al.* v. *Riddell et al.* 55 Ill. 269.

The cases of *McLean* v. *McBean,* 74 Ill. 137, *Hoffman* v. *Wilding,* 85 id. 122, *Guy* v. *Gerick,* id. 429, *Laughlin* v. *Hess,* 89 id. 122, have no application, as they apply to cases of debts of the ancestor that could be filed and proved against his estate. Here the liability never accrued until long after the death of the ancestor. The measure of the liability of the heir, both at common law and by our statute, is complete, and reaches all the real and personal property received by the heir. *Ryan* v. *Jones,* 15 Ill. 1; *Vanmeter's Heirs* v. *Love's Heirs,* 33 id. 260; *Branger* v. *Lucy,* 82 id. 91.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit for breach of the covenants contained in a deed dated July 29, 1867, executed by Edward C. Dugger and wife, through their attorney in fact, one Wright, for the conveyance to William Vance of certain lots in the town of Ashley, in Washington county, in this State. The suit was by Oglesby, a subsequent grantee, Vance having conveyed to one Criley, and the latter to Oglesby, and was brought against the heirs at law and administrator of Dugger, he having died intestate on August 23, 1869, Oglesby alleging an eviction on October 27, 1874, under a master's deed, executed to one Pearce, in March, 1871, under a decree in a certain suit in chancery. Dugger's title, whatever he had, was by deed from Elizabeth Renfro, and said suit in chancery was by bill filed in the circuit court of Washington county, by Pearce against William P. Renfro and Elizabeth Renfro, his wife, and Dugger, on March 4, 1867, setting up a partnership between Pearce and William P. Renfro, that the lots in question here had been fraudulently conveyed to Elizabeth Renfro, the wife of William P., in exchange for partnership goods, and were held by her in trust for the partnership, and that Dugger took his conveyance of the lots from her, knowing the circumstances under which she took and held the title, the bill praying the appropriate relief. There was a decree in favor

of Pearce, subjecting the lots to sale for the payment of the partnership debts, ordering a sale thereof by the master, under which the master made sale of the lots to Pearce,—all which was in the lifetime of Dugger. The summons in the chancery suit was served on Dugger June 23, 1867, which was before his conveyance to Vance. The covenants were the usual full covenants, among them the covenant of general warranty. There was judgment for the plaintiff, which, on appeal to the Appellate Court for the Fourth District, was affirmed, and then appeal taken to this court.

It is contended by appellants that the covenants of a deed are only against subsisting legal claims, and do not extend to equitable claims. Had Vance here taken his conveyance from Dugger without notice of the equitable interest of Pearce, and before the service of summons on Dugger in the chancery suit, there would have been ground for this claim. But Dugger conveyed to Vance after there had been service of summons on Dugger in the chancery suit of Pearce against him and the Renfros, the bill in which asserted Pearce's or the partnership's equitable title to the lots, and sought to have set aside the deed from Renfro to Dugger, and so Vance was a *pendente lite* purchaser, and he, and all afterward claiming under him, were bound by the decree which was rendered in that suit against Dugger's title.

Where there is an outstanding equitable title, which is entitled, as against the grantee as well as the grantor, in a deed with full covenants, to have united to it the legal estate, and so defeats the estate assumed to be conveyed by the deed, by claim paramount, the covenants must certainly extend to and embrace such equitable claim.

The deed from the master in chancery to Pearce, in the chancery suit of *Pearce* v. *Renfros and Dugger,* was lost, and parol evidence given of its contents. Dunham testified that he was the solicitor of Pearce in said suit; that the deed was executed by the master, acknowledged before the clerk of the circuit court; and delivered to him, as the attorney of Pearce;

that it was at the spring term of the circuit court of Washington county; that he placed it on his desk in the court room, along with a power of attorney from Dugger to Wright, authorizing him to sell and convey the property, and both were lost, and he had never been able to find them afterwards; that he had made diligent search for them; that the deed had not been recorded.

It is objected that this does not show sufficient search for the deed to admit evidence of its contents,—that there should have been search in the recorder's office, and inquiries made of Pearce for the deed. The evidence goes to show that the deed never was in the recorder's office or in the hands of Pearce, but that it was lost before reaching either. The record shows a sale to Pearce by the master, and that a certificate of purchase was issued to Pearce as the purchaser, entitling him to a deed in fifteen months from the tenth day of September, 1868. We think the evidence shows sufficient search for the deed, as also sufficient proof of its contents. In connection with the master's sale and his certificate of purchase in the case, so full proof of the contents of the master's deed would not be required as otherwise there might be.

Another objection made to a recovery is, that the claim was not filed against the estate of Dugger within the two years after the grant of administration. Letters of administration were taken out in 1869, and the claim now sued on was never filed against the estate. The statute provision is that all demands against an estate not exhibited to the county court within two years from the granting of letters of administration shall be forever barred, except as to subsequently discovered estate not inventoried or accounted for by the executor or administrator. All the property, both real and personal, belonging to the estate, was inventoried by the administrator, so that there are no subsequently discovered assets. The eviction did not take place until in 1874. Thus the cause of action here did not in fact accrue until long, and more than two years, after the death of the ancestor, and the

granting of letters of administration and the settlement of his estate. The cause of action here is not a demand which could have been exhibited to the court, proved or allowed against the estate of Dugger any time within two years after the granting of administration on his estate, it not accruing until afterwards.

We are of opinion that the limitation of the statute does not apply to the case.

After the death of Dugger, August 23, 1869, there was a partial reversal by this court of the decree in the chancery suit of *Pearce* v. *Renfros and Dugger*, (see 68 Ill. 126,) and after such reversal the master's deed was executed, and the proceeding of *Pearce* v. *Oglesby* for the writ of assistance under the decree was taken, whereby Oglesby was ousted from the possession; and as all these subsequent proceedings were without reviving the suit against the administrator and heirs of Dugger, it is insisted they were not binding upon the administrator and heirs, and so there was no valid master's deed nor legal ouster of Oglesby. This court affirmed the decree against Dugger in the chancery suit, and all the reversal there was, was of the subsequent decretal order confirming the master's report of the sale which he had made under the decree. The master's report did not show that Pearce ever paid to the master the amount of his bid on the sale of the lots under the decree, or what partnership debts were paid out of the sum bid, and for these reasons the order of confirmation of the master's report was reversed. As respects the executing of the master's deed under the Pearce sale after Dugger's death, it was but a ministerial act, to complete the sale that took place in the lifetime of Dugger; and all the interest that either Dugger or his heirs had in the property after the sale, was the right of redemption by law. We think the master's deed was properly executed without any revival of the suit against the heirs of Dugger.

As to the steps taken in respect to the writ of assistance, it is unnecessary to examine, for the deed of the master in chancery to Pearce being the paramount title, Oglesby might yield voluntarily to it, without the compulsory force of a writ of assistance.

The objection taken to the form of the judgment as being a personal judgment, does not appear to be true in fact. The judgment order finds how much personal property and real estate came to and descended to each one of the heirs, the amount of both being $1338.02. Judgment is then given against all the heirs and the administrator for $3315.62, to be satisfied out of the estate so descended to the heirs, with express provision that neither of the heirs be subjected to a greater liability than to the extent of $1338.02, and that the judgment as to the administrator be *quando acciderent*. We see no objection to the form of the judgment.

There is, however, an objection which is fatal to the recovery upon this declaration. The declaration makes a profert of the deed containing the covenants declared on, from Dugger to Vance. On the trial, after proof that the original deed was not in the plaintiff's possession or power to produce, and that after careful search and inquiry he had been unable to find it, a certified transcript of the record of the deed was offered in evidence, to the introduction of which defendant objected, for the reason that the deed was the foundation of the suit, and a certified copy could not be used in evidence,—that the suit should have been brought upon the deed as a lost instrument to warrant it; which objection the court overruled, and admitted the certified transcript in evidence, to which exception was taken. There was a plea in the case of *non est factum,* among others.

Mr. Chitty, after stating the general rule that in all pleadings if a party claims under a deed he must make a profert of it, or allege an excuse for the omission, lays it down: "But where a profert, or an excuse for the want of it, is necessary, if the plaintiff make profert of and thereby

profess to produce the deed when he is not prepared to do so, and the defendant pleads *non est factum,* the plaintiff will be nonsuited on the trial, as it will not be sufficient in such case to prove that the deed was lost or destroyed, or in the defendant's possession. If, therefore, in such case, the plaintiff be not prepared to produce the deed on oyer being claimed, or at the trial, and has inadvertently pleaded the deed with a profert, the declaration must be amended, and the circumstances which excuse the omission to make a profert should be stated in the declaration." 1 Chitty's Pl. 399.

In *Smith et al.* v. *Woodward,* 4 East, 586, Lord ELLEN-BOROUGH, who gave the opinion of the court, said : "There is no case where the issue being whether such a deed proffered by the plaintiff to the view of the court, and supposed to be in court at the time, be or be not the deed of the defendant, in which it has ever been decided that anything can dispense with the production of the deed itself." And see *Powers et al.* v. *Ware,* 2 Pick. 451 ; *Wofford* v. *Board, etc.* 44 Miss. 587.

Reference is made to our statute, as being supposed to obviate this objection, which provides that a party, by first complying with its provisions, may read in evidence the record of any deed, or a certified transcript thereof, with like effect as though the original of such deed was produced and read in evidence. Rev. Stat. 1874, p. 278, sec. 36. But this is a statute relating to evidence alone, and does not affect any rule of pleading. It applies only where, under the rules of pleading, secondary evidence of the contents of a deed is admissible.

So is the common law rule, that where proof is made of the loss of a deed, a copy of it may be given in evidence with like effect as the original deed ; but this means, where, under the pleading, secondary evidence is admissible in the case,—that is, where there has not been profert made, and circumstances excusing the profert are stated. Where profert is

made the rule would not apply, and so we think it is with this statute.

The judgment of the Appellate Court must be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*